IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2025

## STATE OF TENNESSEE v. DORYON BOOTH

**Appeal from the Criminal Court for Shelby County**
No. W2300591      James Jones, Jr., Judge

_____

**No. W2025-00249-CCA-R3-CD**

_____

The Defendant, Doryon Booth, appeals the revocation of his probation and reinstatement of his original four-year sentence in confinement, arguing that the trial court abused its discretion in finding that he violated the terms of his probation and by failing to make adequate findings in support of its decision to revoke his suspended sentence. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and TIMOTHY L. EASTER, J., joined.

Harry E. Sayle, III, Memphis, Tennessee (on appeal), and Akruti Chandrayya, Shelby County Public Defender, Memphis, Tennessee (at hearing), for the appellant, Doryon Booth.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Caleb Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In 2023, the Defendant was convicted in the Shelby County Criminal Court of convicted felon in possession of a firearm and evading arrest, for which he received a four-year sentence, suspended to supervised probation. On May 13, 2024, the State filed a

probation violation report alleging that the Defendant had violated the terms of his probation by the March 5, 2024 issuance of a warrant for his arrest for vandalism; by not complying with home visits by his probation officer and failing to report to his probation officer as instructed; by testing positive for marijuana, benzodiazepines and oxycodone/oxymorphone on January 11, 2024; by not making required payments on his supervision fee and court cost balances; and by failing to complete a required MRT class. On July 25, 2024, a probation violation warrant was issued based on the above alleged violations.

On February 4, 2025, the State filed a "Supplemental Petition to Revoke Suspended Sentence" alleging that the Defendant had also violated his probation by his October 31, 2024 charges for aggravated assault and vandalism under $1,000, which were based on the Defendant's assaulting his girlfriend, punching a hole in the wall of their home, threatening to kill her with a handgun, and following her and firing two gunshots at her as she fled the home.

At the Defendant's February 11, 2025 probation revocation hearing, Brittany Chapman, who made it clear that she was a reluctant witness appearing pursuant to subpoena, testified that the Defendant was her fiancé and the father of her one-year-old daughter. She recalled having testified at the preliminary hearing but said that the details were "a little groggy." She stated that on the morning of October 31, 2024, she and the Defendant got into an argument because the Defendant was upset about missing their daughter's first Halloween. She said she had reviewed the affidavit involving the incident and wanted to correct that the Defendant did not hit her in the head but instead grabbed her leg. She said she was getting ready to leave the house that morning when "[b]asically, [the Defendant] got upset[,]" "[the Defendant] said some words, [she] said some words, and . . . someone called the police."

Ms. Chapman testified that she owned a firearm, which on that morning was inside her purse underneath her bed. She said the Defendant grabbed her purse but to her knowledge did not do anything with the firearm. When asked if the Defendant threatened her with the firearm, she responded that the Defendant said, "[t]hat if he wanted to do something that it can't stop from the law or whatever." She said that the Defendant did not point the gun at her. She stated that she left the house and was down the street in her vehicle when she heard a gunshot. She did not know if it was her gun that fired the gunshot, and she never saw the Defendant fire the gun.

Ms. Chapman expressed her opinion that the Defendant needed counseling or a drug program rather than incarceration. She said the Defendant was using marijuana daily at the time of the incident, was employed at a cleaning company and had a part-time job as a cook, was involved in the life of their child, and contributed financially to the child's

support. She testified that she was not afraid of the Defendant and had no fear of his repeating his actions of October 31, 2024.

On cross-examination, Ms. Chapman testified that she never saw the Defendant wave or otherwise threaten her with the gun. She said she was "a nice piece down the road" when she heard the gunshot, and that she did not know who fired the gunshot. She stated that she asked the police officers to allow her to look at her gun so that she could determine if it had been fired, but the officers would not allow it. She testified that her daughter had a health condition that required her to have supplemental oxygen and agreed that the Defendant was a "responsible father" who "for the most part" was present for doctor's visits "and things along those lines." She agreed that it was "absolutely essential" for the Defendant to return home to care for his child.

At the conclusion of the hearing, the trial court found that the State had carried its burden of proving by a preponderance of the evidence that the Defendant violated his probation by threatening Ms. Chapman with the gun and firing a gun. After noting that the Defendant was on probation for being a convicted felon in possession of a firearm and evading arrest, the trial court further found that the Defendant's possession of the gun showed that the Defendant "clearly ha[d] a disregard for" the rules, and that there was "nothing indicating to the Court that [the Defendant was] not going to have this same attitude . . . if he were to be engaged with other folks." The trial court, therefore, revoked the Defendant's probation and ordered the original four-year sentence into effect. On February 11, 2025, the trial court entered a written order to that effect, with a notation that the Defendant receive jail credit from October 31, 2024 to February 11, 2025. This appeal followed.

## ANALYSIS

The Defendant argues that the trial court abused its discretion in finding that the State proved that the Defendant violated the terms of his probation and in revoking the Defendant's suspended sentence without adequately stating its reasons on the record. The State argues that the trial court's decisions to revoke probation and order execution of the original sentence were reasonable and supported by the record. We agree with the State.

"[P]robation revocation is a two-step consideration on the part of the trial court." *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). "The first [step] is to determine whether to revoke probation, and the second [step] is to determine the appropriate consequence upon revocation." *Id.* Each of these is a separate and distinct decision, although there is no requirement that two separate hearings be held. *Id.* at 757-8. The standard of review for a probation revocation case is "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the

reasons for its decisions as to the revocation and the consequence on the record." *Id.* The trial court's findings need not be "particularly lengthy or detailed." *Id.* at 759.

Upon finding by a preponderance of the evidence that a defendant has violated his probation by committing a new felony, a trial court has the discretionary authority to revoke the defendant's probation and place the original sentence into effect. Tenn. Code Ann. § 40-35-311 (e)(2). When determining the consequences for a probation violation, "a trial court may consider 'the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character.'" *State v. Williams*, 673 S.W.3d 255, 260 (Tenn. Crim. App. 2023) (quoting *Dagnan*, 641 S.W. 3d at 759, n. 5).

Although the trial court's findings were not lengthy, we conclude that it made adequate findings, supported by the record, for its decision to revoke the Defendant's suspended sentence and to order the original sentence into effect. The trial court found that the circumstantial evidence of the victim's having a gun in her purse, the Defendant's having picked up the purse and made a statement about being able to do what he wanted regardless of law enforcement, and the victim's having heard a gunshot as she drove away, "indicate[d] that more likely than not, [the Defendant] was the person firing the gun." The trial court then found that the Defendant's willingness to possess and use the gun as a convicted felon indicated that he would not follow the rules and that he was a danger to others. Accordingly, we conclude that the trial court acted within its discretion in its sentencing determinations.

## <u>CONCLUSION</u>

Based on our review, we affirm the judgment of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE

- 4 -